UNITED STATES, Appellee

v.

John C. McALLISTER, Specialist
U.S. Army, Appellant

No. 00-0252

Crim. App. No. 9601134

United States Court of Appeals for the Armed Forces

Argued October 17, 2006

Decided January 10, 2007

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, J., joined.


STUCKY and RYAN, JJ., did not participate.


Counsel

For Appellant:  David P. Sheldon, Esq. (argued); Captain Julie
A. Caruso (on brief); Major Fansu Ku and Captain Charles A.
Kuhfahl.

For Appellee:  Captain Larry W. Downend, (argued); Colonel John
W. Miller, Lieutenant Colonel Natalie A. Kolb, and Major William
J. Nelson (on brief).

Military Judges:  Patrick K. Hargus (trial), Debra L. Boudreau
(trial), and Donna L. Wilkins (DuBay hearing).


**This opinion is subject to revision before final publication.**

United States v. McAllister, No. 00-0252/AR

Judge ERDMANN delivered the opinion of the court.

Specialist John C. McAllister was convicted at a general court-martial of disobeying a superior commissioned officer and unpremeditated murder, in violation of Articles 90 and 118, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 890, 918 (2000). He was sentenced to a dishonorable discharge, confinement for life, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence and the United States Army Court of Criminal Appeals affirmed the findings and sentence. United States v. McAllister, No. ARMY 9601134 (A. Ct. Crim. App. Dec. 3, 1999).

On August 2, 2001, this court determined that the military judge erred by denying McAllister's request for expert assistance and refusing to permit a re-test of certain evidence for the presence of deoxyribonucleic acid (DNA). United States v. McAllister (McAllister I), 55 M.J. 270, 276 (C.A.A.F. 2001). We remanded the case, directing that the Judge Advocate General of the Army provide funds for employment of an expert and that the Court of Criminal Appeals "order a factfinding hearing if the additional pleadings make it necessary." Id. at 277. After receiving a declaration prepared by an expert retained by the defense which set forth laboratory results of a DNA re-test, the Court of Criminal Appeals ordered a factfinding hearing pursuant

2

United States v. McAllister, No. 00-0252/AR

to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967). United States v. McAllister (McAllister II), No. ARMY 9601134 (A. Ct. Crim. App. Dec. 9, 2003) (memorandum opinion on remand). After the factfinding hearing, the Court of Criminal Appeals again affirmed the findings and sentence. United States v. McAllister (McAllister III), No. ARMY 9601134 (A. Ct. Crim. App. Oct. 28, 2005) (memorandum opinion on remand). We granted review to determine whether the denial of expert assistance to the defense constituted a violation of McAllister's right to present a defense.[1]

"Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967). McAllister contends the factfinding hearing revealed that he was improperly denied material evidence when the military judge denied his request for expert assistance and DNA re-testing. He claims that this error "directly impacted [his] ability to present a defense . . . [and] is clearly an error of

_____

[1] On May 2, 2006, we granted review of the following issue:

> WHETHER APPELLANT'S RIGHT TO PRESENT HIS DEFENSE WAS
> VIOLATED WHEN HE WAS PREVENTED FROM EMPLOYING AND
> UTILIZING A NECESSARY DNA EXPERT AT HIS TRIAL AND
> WHETHER THAT ERROR WAS HARMLESS.

constitutional dimension."  In light of the evidence derived from DNA re-testing and revealed at the factfinding hearing, we conclude that the military judge's error had the effect of denying McAllister the due process right to present evidence establishing a defense.  Because we conclude that this error was not harmless beyond a reasonable doubt, we reverse.

## Background

The facts relating to our determination that the military judge erred by denying expert assistance to McAllister's defense are set forth in our initial opinion and will not be restated in this opinion.  See McAllister I, 55 M.J. at 271-74.  In that opinion, we remanded the case to provide McAllister "an opportunity to demonstrate to the Court of Criminal Appeals, with the assistance of an expert in [polymerase chain reaction] testing, how he would have changed the evidentiary posture of this case if the military judge had granted his request for [a DNA expert]."  Id. at 276.

Following that decision, McAllister employed Technical Associates, Inc. (TAI), to review the previous DNA testing of material found under the victim's fingernails and to re-test that material.  Mr. Marc Taylor, laboratory director for TAI, provided a declaration setting forth his conclusions and results of TAI's new DNA testing.  Based on the content of that

_____

63 M.J. 281 (C.A.A.F. 2006).

United States v. McAllister, No. 00-0252/AR

declaration, the Court of Criminal Appeals determined there were "material questions of fact that might give rise to relief" and directed a factfinding hearing. McAllister II, No. Army 9601134, slip op. at 14.

At the factfinding hearing, the military judge heard testimony from Mr. Taylor concerning his review of the Government's original DNA tests and the TAI re-test. The Government's DNA expert from the initial trial, Ms. Meghan Clement, also testified about the initial DNA tests and her review of Mr. Taylor's re-test. At the conclusion of the factfinding hearing the military judge made extensive findings of fact as well as conclusions of law. The military judge found that "the government has established beyond a reasonable doubt that the court members' findings of guilty would not have been substantially swayed by the 'alleged errors' enunciated in Mr. Taylor's declaration" and that "[i]f the 'new' evidence had been presented to the members at the trial in relation to other evidence presented at trial, the members' findings would have been the same."

The Court of Criminal Appeals again affirmed the findings and sentence, finding that "the verdict was not substantially impacted by the military judge's erroneous denial of expert assistance for the defense at trial or by the fact that the

5

panel members did not hear the testimony of the defense DNA expert." McAllister III, No. Army 9601134, slip op. at 16-17.

## Standard

Initially we must determine what standard we should apply to review the impact of the DNA re-test and the other evidence disclosed at the factfinding hearing. McAllister argues that the factfinding hearing demonstrated that "material and relevant evidence was improperly excluded by the military judge and [since] this exclusion directly impacted [his] ability to present a defense, the denial of the relevant and necessary defense expert [was] clearly an error of constitutional dimension." As a result, McAllister argues that we cannot affirm his conviction unless the Government demonstrates beyond a reasonable doubt that the error was harmless.

The Government argues that the military judge's error in denying McAllister expert assistance was "error . . . of an evidentiary nature subject to a nonconstitutional harmless error analysis." The Government further asserts that because the post-trial testing did not present evidence that excluded McAllister as a suspect, the error was harmless.

Our initial opinion in this case did not identify the standard under which any new evidence should be judged, since at that juncture it was not possible to determine the significance of any evidence that might have been presented at the DuBay

hearing.  If the military judge's error was not of constitutional dimension, the appropriate standard is whether the court-martial's findings of guilty were substantially influenced by the error.  We have applied a four-part test to evaluate prejudice under this standard:  "'(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.'"  United States v. Clark, 62 M.J. 195, 200-01 (C.A.A.F. 2005) (quoting United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F. 1999)).  On the other hand, "[i]f the military judge commits constitutional error by depriving an accused of his right to present a defense, the test for prejudice on appellate review is whether the appellate court is 'able to declare a belief that it was harmless beyond a reasonable doubt.'"  United States v. Buenaventura, 45 M.J. 72, 79 (C.A.A.F. 1996) (citing United States v. Bins, 43 M.J. 79, 86 (C.A.A.F. 1995) (quoting Chapman v. California, 386 U.S. 18, 24 (1967))).

## Discussion

McAllister asserts that had he been provided the assistance and testimony of a forensic examiner at his court-martial, the defense would have been able to dramatically alter the evidentiary landscape.  He argues that with the new evidence he could have undermined the weight of the Government's expert

7

testimony and its evidence and also could have presented the evidence that there were other contributors of DNA on the victim's fingernails to raise a reasonable doubt. As the military judge's ruling adversely impacted his ability to present a defense, McAllister argues that the error was of constitutional dimension and was not harmless beyond a reasonable doubt.

The Government argues that the factfinding hearing revealed that any new evidence was "neither relevant nor necessary." The Government asserts McAllister was not prevented from arguing that some unknown person committed the offense at trial and that the TAI DNA analysis merely confirmed what was known before -- that all known suspects other than McAllister were excluded. Finally, the Government asserts that its strong circumstantial case renders any error harmless regardless of whether that error is tested under a constitutional or nonconstitutional standard.

Mr. Taylor's declaration and testimony addressed the following: the impact of the discovery of DNA from three unidentified individuals on the victim's fingernails; the inability of the defense to properly rebut the Government's DNA expert regarding the significance of McAllister's DNA being found on the victim's fingernails and the implication that dried blood associated with McAllister's DNA had been found on her fingernails; and the inability of the defense to challenge the

procedures utilized by the Government's expert in conducting the initial test.  As we find the impact of the discovery of DNA from three unidentified individuals to be dispositive of this case, we need not address other aspects of Mr. Taylor's evidence or testimony.

The military judge's findings, as supported by evidence presented at the factfinding hearing, reveal substantive evidence that could have been beneficial to the defense at trial.  During the re-test by TAI, DNA material from the victim's fingernails was again compared to known DNA samples from McAllister, the victim, other potential suspects, and individuals who may have been involved in some manner with the victim.  In relative terms, McAllister's DNA was present on the victim's fingernails in greater amounts than others. Additionally, the re-test confirmed the DNA of the victim and her two-year-old daughter on the fingernails.

Significantly, TAI's re-examination of the fingernails revealed the presence of DNA from three previously unreported contributors:  an unknown male contributor on a nail of the left hand; an unknown female contributor on a nail of the right hand; and an unknown contributor on a nail of the right hand.  Ms.

Clement, the Government expert from the original trial, agreed

that there was DNA from an unknown male and unknown female.[2]

While noting that some of the difference between the

original DNA analysis presented at trial and the post-trial

analysis was the result of laboratory policy on reporting or not

reporting results, the military judge found:

> If a defense DNA expert had examined and tested this
> evidence prior to trial, the members would have been
> informed that there were profiles for at least two
> other unknown individuals present on [the victim's]
> nails.  The members would have also been told that
> there exists some trace alleles on [the victim's]
> nails that belonged to a third unknown person.

Had the defense been properly afforded expert assistance

prior to and at the original trial, the discovery of DNA from

three previously unidentified individuals would have been

presented to the members.  This new evidence could have been

used by the defense to attack the thoroughness of the original

test and the weight that the members should accord that

Government evidence.

The new evidence, however, had a more significant potential

role.  The discovery of DNA from three unidentified individuals

-- evidence that was unavailable to the defense at trial --

would have changed the evidentiary posture of the case.  The

---

[2] The disagreement between Mr. Taylor and Ms. Clement with
respect to the third unknown contributor involved the strength
of the indications that DNA was present in the sample.  Ms.
Clement indicated that because of the absence of certain

original trial proceeded with nothing to contradict the exclusive character of the Government's DNA evidence.  The apparent fact that all known suspects other than McAllister were excluded stood as an unrebutted scientific fact.  The trial counsel's closing argument capitalized on this evidence, arguing that all the suspects other than McAllister were excluded as if the DNA evidence sealed McAllister's guilt.  As we noted in our initial disposition of this case, the nature of this evidence and the manner in which it was used at the original trial made the Government's DNA evidence "the linchpin of the prosecution case."  McAllister I, 55 M.J. at 276 (emphasis added).

Not only could this new DNA evidence potentially undermine the conclusiveness and weight of the Government's DNA evidence and the Government's original trial position, it takes on an importance of its own in this otherwise circumstantial case. There is now hard evidence from which to conclude that someone other than McAllister or any other known suspect was in physical contact with the victim at or near the time of her demise.  In turn, this new DNA evidence could be argued to support a conclusion that someone else committed the murder and thereby raise a reasonable doubt about McAllister's guilt.

Having reviewed the evidence that would have been developed absent the military judge's error in denying McAllister expert

_____

indicators in the DNA test results, she would not have reported

United States v. McAllister, No. 00-0252/AR

assistance, and having determined that this evidence could raise a reasonable doubt as to guilt, we conclude that McAllister was deprived of "relevant and material, and . . . vital" testimony and evidence. Washington, 388 U.S. at 16. The effect of the military judge's ruling denying McAllister expert assistance was to deny him the right to present a defense -- a defense to "the linchpin of the prosecution case." McAllister I, 55 M.J. at 276. The right to present a defense "is a fundamental element of due process of law." Washington, 388 U.S. at 19; Webb v. Texas, 409 U.S. 95, 98 (1972) ("[J]udge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment."). We conclude that McAllister was deprived of his constitutional right to a fair hearing as required by the Due Process Clause. Jenkins v. McKeithen, 395 U.S. 411, 429 (1969) (citing Morgan v. United States, 304 U.S. 1, 18 (1938); Baltimore & Ohio R.R. Co. v. United States, 298 U.S. 349, 368-69 (1936)).

We must next determine whether the Government has sustained its burden of demonstrating that this constitutional error was harmless beyond a reasonable doubt. Chapman, 386 U.S. at 24; United States v. Simmons, 59 M.J. 485, 489 (C.A.A.F. 2004). The

_____

positively the presence of DNA from a third unknown individual.

Government must demonstrate that there was "no reasonable possibility" that the absence of this potentially exculpatory DNA evidence "contributed to the contested findings of guilty." United States v. Kreutzer, 61 M.J. 293, 300 (C.A.A.F. 2005) (citing Gutierrez v. McGinnis, 389 F.3d. 300, 307-08 (2d Cir. 2004). It has not.

We review de novo the question of whether a constitutional error was harmless beyond a reasonable doubt. United States v. Long, 64 M.J. 57, 66 (C.A.A.F. 2006); Kreutzer, 61 M.J. at 299. The Government relies upon the four factor test for harmless error in arguing that this error was harmless under either the constitutional or nonconstitutional standard: "the strength of the Government's case, the weakness of [McAllister's] case, the immateriality of Mr. Taylor's proffered testimony, and the ultimate fact that [McAllister] could not be excluded as a major contributor of DNA even after additional DNA testing."

In each respect, this new DNA evidence undermines the Government's argument that the error was harmless and we conclude the error was clearly not harmless beyond a reasonable doubt. The DNA evidence of three unknown contributors directly attacks the strength of the Government's case. That same evidence enhances the defense and potentially casts doubt upon McAllister's guilt. Mr. Taylor is an essential witness to explain the new DNA analysis and explain the significance of

13

those findings. Finally, while McAllister is not excluded as a contributor of DNA, he is no longer the sole contributor as the Government portrayed him to be.

At trial, McAllister's DNA was the hard evidence solidifying a primarily circumstantial case. Its importance in this context was significant and the members displayed great interest in the DNA evidence by asking numerous questions. McAllister I, 55 M.J. at 273. The fact that the members did not have before them scientific evidence that three other persons contributed DNA to the victim's fingernails precluded the defense from presenting an entire line of defense to the members. This new DNA evidence would have allowed the defense an opportunity to raise a reasonable doubt. Therefore, we conclude that the error in denying the defense request for expert assistance prevented the defense from presenting critical evidence and was not harmless beyond a reasonable doubt.

## Decision

The decision of the United States Army Court of Criminal Appeals is reversed. The findings of guilty of Charge II and its specification and the sentence are set aside. The remaining findings are affirmed. The record is returned to the Judge Advocate General of the Army. A rehearing is authorized on the affected charge and the sentence.