# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, MORRIS, and ARGUELLES
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist ESTEBAN OLAHPRADO**
**United States Army, Appellant**

ARMY 20220200

Headquarters, 7th Infantry Division
Jessica R. Conn, Military Judge
Colonel Robert A. Rodrigues, Staff Judge Advocate

For Appellant: Captain Matthew S. Fields, JA (argued); Lieutenant Colonel Autumn R. Porter, JA; Major Mitchell D. Herniak, JA; Captain Matthew S. Fields, JA (on brief and reply brief); Colonel Philip M. Staten, JA; Major Mitchell D. Herniak, JA; Captain Matthew S. Fields, JA (on brief on specified issues); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Mitchell D. Herniak, JA; Captain Matthew S. Fields, JA (on reply brief on specified issues).

For Appellee: Lieutenant Colonel Matthew T. Grady, JA (argued); Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Chase C. Cleveland, JA; Lieutenant Colonel Matthew T. Grady, JA (on brief and on brief on specified issues).

9 April 2024

--------------------------------------
MEMORANDUM OPINION
--------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ARGUELLES, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of communicating a threat, one specification of assault consummated by battery, and three specifications of domestic violence in violation of Articles 115, 128 and 128(b), Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 915, 928, 928(b). The panel acquitted appellant of five specifications of domestic violence, in violation of Article 128(b),

UCMJ. The military judge sentenced appellant to reduction to the grade of E-1, a reprimand, and confinement for 176 days. The convening authority took no action on the findings and sentence.

This case is now before us for review under Article 66, UCMJ. In addition to the two assignments of error raised by appellant, we ordered the parties to address two additional issues. Having fully considered all of the pleadings and the entire record, we find that the military judge erred in denying appellant's request for expert assistance, in allowing the panel to consider evidence pertaining to a dismissed specification, and improperly considering that same evidence in her sentencing deliberations. As set forth in our decretal paragraph, we will set aside the guilty findings for the three domestic violence specifications against the victim, as well as the entire sentence.[1]

## BACKGROUND

Appellant was charged with four specifications of domestic violence against the victim ("victim"), and six specifications of domestic violence, two specifications of communicating a threat, and one specification of assault consummated by battery against a second victim ("V2").

Appellant was in a relationship with V2 and, after that relationship ended, entered into an intimate but non-exclusive relationship with the victim. When V2 found out about appellant's relationship with the victim, she began communicating with the victim to warn her about appellant's violent nature. Among other things, the victim testified that her communications with V2, and/or her seeing other men, triggered appellant's domestic violence assaults against her.

Prior to closing arguments, the military judge dismissed two of the domestic violence specifications pertaining to V2. At the conclusion of the trial, the panel returned not guilty verdicts on the four remaining V2 domestic violence specifications, but found appellant guilty of assault consummated by a battery and the two specifications of communicating a threat against V2.

With respect to the victim, at issue in this appeal is Specification 8 of Charge I ("Specification 8"), which alleged that appellant punched her in the face at a time and date separate from the other three domestic violence specifications in which she

---

[1] Appellant also personally raises one error (post-trial delay) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Although this claim appears on its face to be meritorious, *see United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011) (holding that personnel and administrative issues are not legitimate reasons justifying otherwise unreasonable post-trial delay), it is moot given our decision to set aside the sentence in its entirety.

was the victim. As set forth in greater detail below, after closing arguments and instructions, but before the panel began its deliberations, the military judge dismissed Specification 8. The panel then returned guilty verdicts on the three remaining domestic violence specifications pertaining to the victim, Specifications 9, 10, and 11 of Charge I.

In pre-trial discovery, the government produced photographic evidence of both victims' alleged injuries. With respect to the victim, the only photographic evidence admitted at trial was Prosecution Exhibit ("PE") 12, which included six pictures of the injuries allegedly suffered by the victim as a result of appellant punching her in the face as alleged in Specification 8. There was no photographic evidence of any of the victim's other alleged injuries.

Prior to trial, the defense filed a "Motion to Compel Expert Production of a Forensic Pathologist" to challenge the photos, including PE 12, purporting to show the victims' injuries. At the Article 39(a) motions hearing held on 22 February 2021, the expert indicated that his expertise was in "the interpretation of photographic or narrative evidence of injuries and trying to correlate that with proposed mechanisms of imparting them on an individual." He stated that he had testified many times "in court-martials as it relates to injuries depicted on photos." With respect to the first page of PE 12, the expert testified that although the photo was "suboptimal," he did not see clear evidence of any laceration causing the blood, and noted that the blood in the photo "cannot be explained by gravity alone." The expert also testified that it was possible that this was an attempt by the victim to transfer blood onto her face to make the injury look worse.

After the expert testified the military judge immediately asked defense counsel "[i]s your motion to compel for expert assistance or for expert testimony." *See United States v. Tinsley*, 81 M.J. 836, 840-41 (Army Ct. Crim. App. 2021) (noting the often blurred distinction between an expert witness and expert consultant). Presumably because the expert had already done his "consultation" and offered his opinion about the photos, defense counsel responded that he wanted "[t]estimony, your honor." Although the government requested leave to address the *Houser* factors relevant to testifying experts, the military judge did not grant that request or otherwise request any additional briefing from the parties. *See United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993) (setting forth the relevant expert testimony factors).

In an email dated 10 March 2022, the military judge stated:

With regard to the motion to compel an expert forensic pathologist, the defense initially filed a request to the convening authority and a motion for an expert consultant forensic pathologist. At the Article 39(a) session, the defense requested an expert witness forensic pathologist.

The defense did not discuss or analyze the standard for expert testimony in *United States v. Houser*, 36 M.J. 392 and failed to meet its burden for an expert witness. The Court intends to DENY the motion to compel [the expert].

The court-martial concluded on 21 April 2022, and the military judge signed the Entry of Judgment (EOJ) on 14 June 2022. The military judge did not, however, issue a final written ruling on the motion to compel the expert until 12 May 2023, which was more than 17 months after the Article 39(a) motions hearing, 14 months after her tentative email ruling, and 11 months after the EOJ.

The military judge started her written ruling by noting that the defense never addressed the *Houser* factors or asked for leave of court to do so after she sent her email. After first noting in her written ruling that she "considered the Defense withdrew their motion" to compel an expert, the military judge nevertheless addressed the standards for both a motion to compel an expert consultant and to compel an expert witness. Although the military judge correctly cited the different standards, the sum total of her legal analysis was that because the expert noted that the pictures were of suboptimal quality, the defense did not meet its burden to show that "an expert is necessary to understand bruises or review photographs . . . ." Moreover, the military judge made no mention in her ruling, or in any way attempted to address the relevance of, the expert's testimony that discrepancies in the first photo in PE 12 suggested improper manipulation. Likewise, with respect to the request for an expert witness, the judge noted the defense did not address the *Houser* factors and again summarily concluded the defense presented the expert's "qualifications and caveated opinions on suboptimal photos."

During cross-examination of the victim at trial, defense counsel attempted to highlight the issues with the first photo in PE 12. But without any expert testimony, he was not very successful in making his point after the victim denied altering the photo. Likewise, the government offered up its own theories about the blood in the photo, suggesting that maybe it flew out of the victim's inner lip and landed on her face. The government also argued during closing that due to the force of the punch, the victim's teeth may have cut her skin. The government advanced this argument notwithstanding that no cut in the skin is apparent in the first photo in PE 12, nor do the other photos in PE 12 show any cuts in the skin that would have caused the blood under the lip in the first picture.

In addition to PE 12, the government entered into evidence a string of text messages where appellant threatened to "f—up" the car of another man the victim was seeing. The government also introduced a set of text messages where, after the victim said she no longer wanted to see him, appellant told her, "I'm going to kill you if you don't stop." On the other hand, the victim testified that she did not believe appellant wanted her to stop doing anything, she was not afraid when she

received the messages, and appellant sent them before he ever hit her. Finally, the government introduced an undated string of text messages in which appellant told the victim, "Your mine bitch Imma kill you If you don't stop it It's not my fault you're preggo." The victim testified that when she received the message she mistakenly thought she was pregnant, but did not feel like appellant was going to kill her. The government did not, however, tie any of this additional evidence directly to the alleged assaults as it did with PE 12.

Although Specification 8 alleged that appellant punched the victim in the face in April of 2020, at trial the victim testified that it happened in July. After hearing arguments from both counsel during the Article 39(a) instructions conference, the military judge ruled that she was not going to give a variance instruction.

Trial counsel did not limit his discussion of PE 12 to Specification 8, but rather argued that the panel should "look at the pictures" when deciding whether or not to believe the victim's testimony that appellant committed all four of the alleged domestic violence offenses:

> And that culminated with [the victim] when he punched her in the stomach, punched her in the face, pulled her off the bed, and slapped her. And the government is going to ask you to take a look at these messages and *the pictures* (emphasis added) and consider the testimony you heard, and make a finding of guilty.
> . . . .
> Legal and competent evidence. You have that before you. You have the messages, you have *the pictures* (emphasis added). You heard testimony. Even putting that together, look at the words of the accused. Look at *the pictures* (emphasis added).

Again, the only "pictures" of the victim in evidence was PE 12, which pertained exclusively to Specification 8.

After closing arguments and after the military judge instructed the panel, but before the start of deliberations, the military judge granted a defense Rule for Courts-Martial [R.C.M.] 917 motion and dismissed both Specification 8 and Specification 1, an unrelated specification pertaining to V2. Although she told the panel members to strike Specification 8 from their flyers and to disregard her instructions on that specification, the military judge did not withdraw PE 12 or otherwise tell the panel not to consider PE 12:

> Members, I'd like you to take out the flyer. So Specification 1 of Charge I and Specification 8 of Charge I, I would like you to line those out. Those are no longer before the court, and with regard to my instructions

on those two specifications, Specification 1 and Specification 8 of Charge I, just disregard my instructions on those offenses.

The military judge did not ask the parties if they objected to the exhibits going back with the panel, but rather only directed the bailiff to "hand the president Prosecutions [sic] exhibit 1, 2, 3, 4, 6, 7, 9, 10, 12 and Defense Exhibit I."

Following the panel's verdict, which included guilty findings on the three remaining domestic violence specifications pertaining to the victim, appellant requested sentencing by the military judge alone. With respect to the victim, the government put on no sentencing case, noting only that they contacted her and she declined to make a statement. On the other hand, appellant called several family members who testified about his upbringing in Colombia and his decision to join the Army and become a U.S. citizen. Likewise, his "Good Soldier Book" sentencing exhibit contained no less than eight letters submitted by both officers and non-commissioned officers attesting to what a good soldier and hard worker he was.

After both parties rested their sentencing cases and the military judge announced what exhibits she was "taking back," to include PE 12, the following colloquy ensued:

> DC: Your Honor, we would ask that Prosecution Exhibit 12, based off of testimony and based off [appellant] being found not guilty of that, not be considered in your determinations as regard to sentencing.
> MJ: Well, I consider – all of the evidence that is before the court [sic].
> DC: Yes, Your Honor.
> MJ: I take back all of the exhibits.
> DC: Yes, your Honor.
> MJ: But I understand what I am sentencing him for. I am sentencing him for the specific specifications that he was found guilty of.
> DC: Yes. Thank you, Your Honor.

Notwithstanding the fact that the military judge dismissed Specification 8, the convening authority improperly stated in his reprimand that appellant violated the UCMJ "by wrongfully committing a violent offense against your intimate partner by punching her in the face with your hand . . . ."

## LAW AND DISCUSSION

### A. Expert

#### 1. Law

Appellant argues that the military judge erred in failing to grant his motion for an expert consultant or expert witness. We review a military judge's ruling on a request for expert assistance, and her decision regarding the admissibility of expert testimony, for abuse of discretion. *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010). The abuse of discretion standard is deferential, predicating reversal on more than a mere difference of opinion. *See United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) ("[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range.") (citation omitted). As the Court of Appeals for the Armed Forces (CAAF) held in *United States v. Manns*, however, we give a military judge's evidentiary ruling less deference if she fails to articulate her balancing analysis on the record. 54 M.J. 164, 166 (C.A.A.F. 2000).

In *United States v. Turner*, 28 M.J. 487, 488 (C.M.A. 1989) (citing *Ake v. Oklahoma*, 470 U.S. 68 (1985)), the Court of Military Appeals (CMA) set forth the general principle that "in trials where expert testimony is central to the outcome," a defendant must be provided with expert assistance. The court in *Turner* explained that an expert may assist the defense in two ways: (1) as a trial witness subject to being interviewed by the government; and, (2) as a consultant whose discussions with the defense team fall under the attorney-client privilege. *Id.* at 488–89.

In *United States v. Garries*, 22 M.J. 288, 291 (C.M.A. 1986), the CMA held that a showing of necessity entitles the accused to an expert consultant. In *United States v. Gonzalez*, 39 M.J. 459, 461 (C.M.A. 1994), the same court set forth a three-factor test to determine whether the assistance of an expert consultant is "necessary:" (1) why the expert assistance is needed; (2) what the expert assistance would accomplish for the accused; and (3) why defense counsel is unable to gather and present the evidence that the expert would be able to develop. In addition to addressing these three factors, an accused seeking the appointment of an expert consultant must demonstrate that the denial of such assistance would result in a fundamentally unfair trial. *United States v. Freeman*, 65 M.J. 451, 458 (C.A.A.F. 2008) (holding an accused has the burden of establishing that a reasonable probability exists that an expert would be of assistance and that denial of the expert would result in a fundamentally unfair trial).

With respect to testifying experts, in *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993), the CMA set forth six factors a proponent must establish in order to have an expert testify: (1) the qualifications of the expert; (2) the subject

matter of the expert testimony; (3) the basis for the expert testimony; (4) the legal relevance of the evidence; (5) the reliability of the evidence; and (6) whether the evidence passes the Military Rule of Evidence [Mil. R. Evid.] 403 balancing test.

In *United States v. McAllister*, the CAAF held that a military judge's erroneous ruling denying appellant expert assistance deprives him of the right to present a defense, "a fundamental element of due process of law." 64 M.J. 248, 252 (C.A.A.F. 2007) (citations omitted). Accordingly, we review such errors under the constitutional harmless error standard, which requires the government to demonstrate that the error is harmless beyond a reasonable doubt such that there is no reasonable probability it contributed to the contested findings of guilty. *Id.* at 252-53.

### 2. Analysis

In its briefing, the Government made no attempt to justify the military judge's ruling under the standards set forth in *Gonzalez* and *Houser*. Instead, the government argued only that because the military judge ultimately dismissed Specification 8, the issue is moot.[2] For all of the reasons set forth below, we disagree.

First, although the expert testified that his opinion about the first photo in PE 12 was "limited by the poorer quality of the photograph provided," he also confirmed that notwithstanding such limitations, the apparent blood stain under the lip "is not exactly distributed in a way that is only explained by gravity," and "it cannot be explained by gravity alone because the gravity will not cause the drop of stain to drift to the right." The expert also confirmed that the victim's transferring of that blood from another location "could explain the configuration that is not consistent with the force of gravity alone." The expert also testified that based on both his observation of the first picture, and the other photos he observed in PE 12, "I don't see a laceration or evidence of a laceration" that would cause the blood stain in the first photo. Finally, even though the expert conceded on cross-examination that the photos in PE 12 were "suboptimal," he made clear that the nature of the photos were a possible "limitation" on the extent of his opinions, and not that they in any way undermined or otherwise caused him to question his stated opinions. Based on our own review of PE 12, while the pictures may not be professional-grade hospital photographs, they clearly depict alleged injuries to the victim, and the blood "dropping" under the lip in the first photo does seem odd in

---

[2] At oral argument the government attempted to raise two new grounds to support its assertion that the military judge did not err in denying the expert request, which we decline to consider. *See United States v. Gilmet*, 83 M.J. 398, 408 (C.A.A.F. 2023) (declining to consider arguments raised for the first time at oral argument as untimely).

that it is not linear and there appears to be no underlying wound causing the blood to pool under the victim's lip. Likewise, none of the other photos in PE 12 appear to reveal any injury that might have resulted in blood under the victim's lip.

With respect to the consultant/witness distinction, as noted above, this case was somewhat unique in that as opposed to stating his qualifications and describing what he could potentially provide to the defense, as is typical at the outset when the defense seeks an expert consultant, at the Article 39(a) motions hearing the expert gave his opinions and analysis of the actual evidence in the case. While we commend the military judge for recognizing the difference between an expert consultant and an expert witness, we disagree with her ruling summarily denying the request for expert assistance on the grounds that the defense did not discuss or analyze the standard for expert testimony under *Houser*. Given the facts and circumstances of this case, once defense counsel indicated at the Article 39(a) hearing that they wanted an expert witness, the military judge should have granted the government's request for further briefing of the *Houser* standards, especially since this hearing took place six months prior to the trial. Put another way, given that the issue of consultant versus witness came up for the first time at the hearing, it was simply not fair for the military judge to play "gotcha" by denying the motion on the grounds that the defense never briefed the standards for an expert witness, especially since she never gave the defense the opportunity to provide such briefing. In the alternative and at a bare minimum, the military judge should have at least ruled prior to trial on the motion to compel expert assistance as presented in the moving papers, as such a motion is almost always a precursor for introducing expert testimony at trial. *See United States v. Warner*, 62 M.J. 114, 122 (C.A.A.F. 2005) (discussing the need for defense to consult with an expert prior to determining whether the expert's testimony will be presented in the case).

It is worth noting here that the military judge's four sentence non-substantive email sent prior to trial stating that she "intend[ed] to deny" the motion was at most a tentative ruling not subject to a motion for reconsideration. And, whatever it was, it certainly was not the type of "final" ruling that would have reasonably put the defense on notice of the need to file such a motion. In any event, even if this non-substantive email constituted a "final" ruling subject to reconsideration, appellant's failure to seek reconsideration of an erroneous pretrial ruling does not constitute waiver or in any way preclude him challenging the same ruling on appeal.

Moreover, it is concerning to us that the first time the military judge informed the parties that she was relying on the "suboptimal" nature of the photos as a basis for her denial, or otherwise provided any substantive analysis, was in her written ruling issued 11 months *after* she signed the EOJ. Rule for Courts-Martial 905(f), however, provides that "the military judge may, prior to *entry of judgment*, reconsider any ruling . . . ." While we acknowledge we are not aware of any rule or precedent that firmly establishes when a military judge must make final rulings on

pending motions, we question the efficacy of any such ruling issued after the deadline has passed for filing a reconsideration motion. *Cf. United States v. Henderson*, 83 M.J. 735, 750 n.27 (Army Ct. Crim. App. 2023) (holding that failing to issue prompt rulings on submitted motions is not a military judge best practice).

Along the same lines, we emphasize two - of the many - reasons why trial judges' pretrial rulings are so important. First, rulings like the expert assistance decision here set the conditions for trial while conveying the judge's reasoning and intent. And, our system contemplates the parties' access to reconsideration when they disagree. To preserve that access, judges must make their decisions and convey their reasoning in sufficient time for trial participants to register disagreement.

Second, these rulings and associated analysis demonstrate the judge's attention to relevant facts and applicable legal standards, resulting in significant deference on appeal. Part of that deference comes from the recognition that the military judge almost always makes these rulings amid the time pressures of an upcoming or ongoing trial. It follows that, when a judge waits until after entry of judgment to provide reasons for an interlocutory decision, they will receive less deference.

Turning to the merits of her ruling, we also find the military judge abused her discretion under both the *Gonzalez* and *Houser* tests. Starting with the *Gonzalez* test for expert consultants, the defense met its burden to establish that the expert was necessary to explain the discrepancies in PE 12, which went directly to their challenge of the victim's credibility. This is especially true given: (1) the victim testified she did not manipulate the first photo in any way; and (2) trial counsel's argument that the panel should "look at the pictures" when deciding whether or not to believe the victim. The expert would have also been able to rebut trial counsel's theories that perhaps the blood flew out of the victim's inner lip and somehow wound up back under her chin, or that it was the victim's teeth that caused the blood under her lower lip.[3] With respect to the *Houser* factors, the expert was clearly qualified to testify on a matter that, for the same reasons set forth above, was legally relevant to the trial. Finally, the military judge made no effort to justify her ruling under Military Rule of Evidence 403, but rather simply noted that "[t]he Defense did not address the relevance or reliability of the evidence or the M.R.E. 403 balancing test." *See Manns*, 54 M.J. at 166 ("This Court gives military judges less deference if they fail to articulate their balancing analysis on the record, and no deference if they fail to conduct the Rule 403 balancing.").

By basing her denial of the motion on her conclusion on the "suboptimal" nature of the photos, the military judge usurped the fact-finding role of the panel. It

---

[3] Alternatively, if the military judge had granted the expert witness request, the government might have been reluctant to advance these theories in the first place.

was for the panel to test how the "limitations" of the photos impacted the expert's testimony and opinion, and the military judge erred by jumping to this ultimate conclusion herself. And, as noted above, based on our review of PE 12, we find the photos are clear enough to cause us to question the shape of the blood pattern and the lack of any apparent injuries causing such a pattern. We also question why, if she believed the photos were so suboptimal that an expert's testimony about them would not be helpful to the panel, the military judge did not explain in her written ruling why she allowed trial counsel not only to argue that PE 12 constituted substantive corroborating evidence, but also to present his own lay theories of how the blood got under the victim's lip.

Having found that the military judge erred in denying the request for expert assistance, we review the impact of such error on the remaining three domestic violence guilty verdicts pertaining to the victim under the constitutional harmless error standard. As set forth above, the harmless error standard requires the government to demonstrate that the error is harmless beyond a reasonable doubt in that there is no reasonable probability it contributed to the contested findings of guilty. *McAllister*, 64 M.J. at 252-53. This is a burden the government cannot meet in this case.

Although there were text messages indicating that appellant was jealous and threatened to kill the victim, the victim testified that she was not afraid when she received the messages. And, other than the victim's testimony, the only specific corroborating evidence of an assault against the victim was PE 12. Likewise, trial counsel's argument that the panel could consider PE 12 as evidence corroborating all four domestic violence specifications further undermines any argument that the military judge's erroneous ruling was harmless. Finally, because the expert's testimony would have not only likely demonstrated the manipulation of PE 12, but would more importantly have significantly undercut the credibility of the alleged victim if the panel concluded she was manipulating evidence, the military judge's dismissal of Specification 8 did not render the military judge's erroneous expert ruling to be moot.

Accordingly, based on our review of the entire record, the government cannot meet its burden to show the military judge's denial of expert assistance was harmless beyond a reasonable doubt. Put another way, because we are not convinced beyond a reasonable doubt that the panel would have returned guilty verdicts on the three remaining domestic violence specifications had they heard from the expert, we will set aside the findings of guilt for Specifications 9, 10 and 11 of Charge I.

*B. Prosecution Exhibit 12 (Findings)*

As described above, after closing arguments and after the military judge instructed the panel, but before the start of deliberations, the military judge granted

a defense R.C.M. 917 motion and dismissed Specification 8. Although she told the panel members to strike Specification 8 from their flyers and to disregard her instructions on that specification, the military judge did not withdraw PE 12 or otherwise tell the panel not to consider PE 12. The military judge also did not ask the parties if they had any objections to the exhibits going back with the panel, but rather only directed the bailiff to "hand the president" all of the exhibits previously admitted, including PE 12.[4]

We ordered the parties to provide supplemental briefing on, and heard oral argument pertaining to, whether the military judge erred in allowing the panel to consider PE 12 in its findings deliberations. We appreciate the government's concession in their supplemental briefing that "[t]his court should presume that the panel members viewed and considered all the evidence presented to them, including Prosecution Exhibit 12." Having considered the entire record, we agree with appellant that the military judge committed plain error in allowing the panel to consider PE 12 in their deliberations. Such error warrants relief.

*1. Law*

In *United States v. Driskill,* the CAAF recently addressed the impact of evidence pertaining to a dismissed specification on the remaining findings and sentence. _ M.J. _, 2024 CAAF LEXIS 126 (C.A.A.F. 4 Mar. 2024). Specifically, in *Driskill*, appellant was convicted of one specification of possession of obscene cartoons in accordance with his plea, and two specifications of sexual assault following a contested court-martial. *Id.* at *6. After setting aside the obscene cartoon specification on double jeopardy grounds, the CAAF held:

> For these reasons, the finding of guilty for the Charge and its Specification must be set aside, and the AFCCA must conduct a new review under Article 66, UCMJ, 10 U.S.C. § 866 (2012). Appellant argues that the AFCCA on remand must consider how the admission of the obscene cartoons as evidence may have affected the findings of guilty for the other contested offenses. We agree. Accordingly, in conducting its new review under Article 66, UCMJ, the AFCCA shall evaluate the impact of this Court's dismissal of the Charge and its

---

[4] Given that the military judge never asked counsel if they objected or solicited their input as to which exhibits she was sending back to the panel for their findings deliberations, we agree with the parties that appellant has not affirmatively waived his right to challenge the military judge's determination to provide the panel with PE 12. *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020)) (holding that by affirmatively declining to object and offering no additional instructions, the defense counsel "expressly and unequivocally acquiesce[ed] to the military judge's instructions," and his actions constituted affirmative waiver).

Specification on both (1) the findings of the Additional Charge and its Specifications and (2) the sentence.

*Id.* at *22-23.

When there is no objection, as was the case here, we review the military judge's decision to provide the panel with PE 12 for plain error. *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007) (citations omitted). Plain error requires that: (1) an error was committed; (2) the error was plain or obvious; and (3) the error resulted in material prejudice to a substantial right of the accused. *Id.* The burden is on the appellant to show that all three prongs of the plain error test are satisfied. *Id.*

Although Mil. R. Evid. 401 provides that "evidence is relevant if it has a tendency to make a fact more or less probable than it would be without the evidence," Mil. R. Evid. 403 gives the military judge the discretion "to exclude relevant evidence if its probative value is substantially outweighed by a danger" of, *inter alia,* unfair prejudice, confusing the issues, or misleading the members. With respect to evidence of "crimes, wrongs, or other acts," Mil. R. Evid. 404(b)(1) states that such evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Finally, Mil. R. Evid. 404(b)(2) allows for the admission of evidence of other crimes or bad acts if "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan," provided that the prosecution provides reasonable notice of such evidence either before trial, or during trial with good cause for the lack of pre-trial notice.

In order to admit other "bad acts" evidence under Mil. R. Evid. 404(b)(2), the government must show: (1) that the evidence reasonably supports a finding by the court members that appellant committed the prior bad acts; (2) what fact of consequence is made more or less probable by the existence of this evidence; and (3) whether the probative value is substantially outweighed by the danger of unfair prejudice. *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989).

The CAAF has also held that before admitting evidence under one of the Mil. R. Evid. 404(b) exceptions, the "trial judge must be certain to make the prosecution state exactly what issue it is trying to prove in order to see whether the evidence is probative, how probative it is, and whether it should be admitted in light of the other evidence in the case, and the ever present danger of unfair prejudice." *United States v. Graham*, 50 M.J. 56, 60 (C.A.A.F. 1999) (citation omitted). Likewise, the Military Judges Benchbook states that if the military judge admits evidence of a person's commissions of other crimes, wrongs, or acts, a limiting instruction "must be given upon request or when otherwise appropriate." Dep't of Army Pam. 27-9, Legal Services: Military Judge's Benchbook para. 7-13-1 (25 Oct 2023) [Benchbook]. *See also United States v. Levitt*, 35 M.J. 114, 119 (C.A.A.F. 1992)

("At the very least when requested (*see* Mil. R. Evid. 105), the military judge has a duty to protect the court-martial members from the undue prejudice posed by uncharged-misconduct evidence.") (citation omitted).

Where an appellant fails to preserve a constitutional error, the burden is on the government to show the error is harmless beyond a reasonable doubt, such that there is no reasonable possibility the error might have contributed to the conviction. *See, e.g., United States v. Long*, 81 M.J. 362, 370 (C.A.A.F. 2021). On the other hand, where an appellant fails to preserve a non-constitutional error, the burden is on the appellant to "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017), citing *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1343 (2016). The alleged erroneous admission of evidence in this case falls within the realm of non-constitutional error. *See United States v. Finch*, 79 M.J. 389, 398 (C.A.A.F. 2020) (holding that erroneous admission of video interview evidence is a "nonconstitutional evidentiary error"); *United States v. Greene-Watson*, No. ACM 40293, 2023 CCA LEXIS 542 at *30 (A.F. Ct. Crim. App. 27 Dec 2023) (holding that error in admitting Mil. R. Evid. 404(b) evidence is non-constitutional).

In its supplemental briefing, the government asserts that the submission of PE 12 to the panel during their deliberations falls within the provisions of R.C.M. 923, which in pertinent part provides that "[f]indings that are proper on their face may be impeached only when extraneous prejudicial information was improperly brought to the attention of a member . . . ." We disagree.

In *United States v. Straight*, 42 M.J. 244, 250 (C.A.A.F. 1995), the CAAF described extraneous prejudicial information as "information acquired by a court member during deliberations from a third party or from outside reference materials." An exhibit of which all parties were aware and subsequently challenged as wrongfully submitted to the panel is simply not the same thing as "extraneous materials" from a third party or outside reference materials. To find otherwise would improperly broaden the scope of R.C.M. 923 to include any and all challenged evidentiary rulings at trial, a view unsupported by either the plain language of the rule or any other binding authority.

## 2. Analysis

As noted above, the military judge dismissed Specification 8 just prior to deliberations, and PE 12 depicted only the injuries alleged in Specification 8. Although she told the members to strike Specification 8 from the flyer and to not consider her instructions on that specification, she directed that PE 12 go back with the panel for their deliberations, and gave them no other instructions pertaining to PE 12.

Although not directly on point, the logic and reasoning of *Driskill* is dispositive here. In short, the CAAF's finding that an appellate court must evaluate the impact of evidence pertaining to a dismissed specification on the remaining findings and sentence is an alternative way of saying that, absent some other exception, it is improper to consider evidence pertaining exclusively to a dismissed specification in determining the findings and sentence for the remaining offenses. Put another way, if an appellate court must consider the impact that evidence pertaining to a dismissed specification had on the findings and sentence for the remaining specifications *after* the defective specification is set aside on appeal, the same logic applies even more forcefully to exclude evidence in support of a specification dismissed *prior* to the panel's deliberations for both findings and sentencing.

We start by noting that PE 12 was not admissible under Mil. R. Evid. 404(b)(2) for the following reasons: (1) as part of their pre-trial discovery request the defense requested notice of any 404(b)(2) evidence the government intended to introduce; (2) the government never provided such notice as it pertained to PE 12 before or during trial; and, (3) the military judge never made a good cause finding excusing the lack of such notice. *See United States v. Hilliard*, No. Army 20170377, 2019 CCA Lexis 21 at *6 (Army Ct. Crim. App. 17 Jan 2021) (mem. op.), remanded on other grounds, 79 M.J. 243 (C.A.A.F. 2019) ("In the absence of both notice and good cause, it was error to admit testimony [under Mil. R. Evid. 404(b)] that appellant had previously hit his daughter over the defense objection.").

Moreover, in addition to the fact that the government never gave notice of its intent to introduce PE 12 under Mil. R. Evid. 404(b)(2), the military judge never made a ruling as to its admissibility on that basis. Nor did she "make the prosecution state exactly what issue it is trying to prove in order to see whether the [404(b)(2)] evidence is probative, how probative it is, and whether it should be admitted in light of the other evidence in the case, and the ever present danger of unfair prejudice." *Graham*, 50 M.J. at 60. Finally, even if PE 12 was still admissible under Mil. R. Evid. 404(b)(2) after the dismissal of Specification 8, the military judge never gave the panel the appropriate limiting instructions telling them, among other things, not to use this as evidence of propensity. *See Levitt*, 35 M.J. at 119 ("[T]he military judge has a duty to protect the court-martial members from the undue prejudice posed by uncharged-misconduct evidence"); *United States v. Quezada*, 82 M.J. 54, 59 (C.A.A.F. 2021) ("[P]ropensity evidence is a generally impermissible form of character evidence . . . . .").

In sum, given that the government did not offer PE 12 into evidence at trial under Mil. R. Evid. 404(b)(2), we cannot now justify the military judge's admission of such evidence on the basis of what hypothetically could have happened at trial. *Cf. United States v. Burton*, 67 M.J. 150, 153 (C.A.A.F. 2009) ("As the Government did not offer the evidence under M.R.E. 413, it did not follow the steps required by

M.R.E. 413. Therefore, it may not *a posteriori* justify its closing argument based on what it might have done."). Along the same lines, absent any specific or appropriate limiting instructions, the danger of unfair prejudice, confusing the issues, and misleading the members substantially outweighed any probative value PE 12 may have had under Mil. R. Evid. 404(b)(2). As such, the military judge erred in failing to withdraw PE 12 after she dismissed Specification 8. *See Burton*, 67 M.J.. at 152 ("The Government may not introduce similarities between a charged offense and prior conduct, whether charged or uncharged, to show modus operandi or propensity without using a specific exception within our rules of evidence, such as M.R.E. 404 or 413.").[5]

Having determined that the military judge's error was both plain and obvious, we next look to whether appellant has met his burden to show that the error resulted in material prejudice to his substantial rights. As noted above, the only direct corroborating evidence of any assault against the victim was PE 12. In addition, in his closing argument trial counsel urged the panel to consider PE 12 as corroborating evidence for all four of the domestic violence specifications. Finally, because the military judge did not provide any specific PE 12 limiting instructions to the panel, we are not convinced the members did not view it as improper propensity evidence.

The government claims that because the military judge provided the "spillover" instruction to the panel, we can assume the panel did not improperly consider PE 12. We disagree. First, the intent of the spillover instruction is to guide consideration of *relevant* evidence, not irrelevant evidence. Moreover, the spillover instruction tells the panel that "[e]ach offense must stand on its own, and you must keep the evidence of *each* offense separately," and that "if you find or believe [appellant] is guilty of *one* offense, you may not use that finding or belief as a basis for inferring, assuming, or proving that he committed any *other* offense." Benchbook, para. 7-17 (2023) (emphasis added). The flaw in the government's argument is that while the spillover instruction talks in terms of "each offense," because the military judge dismissed Specification 8, but still provided the panel with PE 12, the spillover instruction did not provide the panel with any specific limitations or guidance as to how they might consider PE 12 in their deliberations.

_____

[5] We recognize that after the granting of a partial motion for dismissal under R.C.M. 917, there may be instances in which a previously admitted exhibit pertains to both dismissed and surviving specifications, making it likely to be proper for the exhibit to remain in evidence. This is not that case. In such a case we would expect the military judge to make findings on the record as to which, if any, exhibits are being withdrawn because they have no application to the remaining specifications. If articulated on the record, such findings would of course be subject a deferential abuse of discretion standard of review.

In sum, in light of our review of the entire record, we find that appellant has met his burden to show that, with respect to the remaining three domestic violence convictions, there is a reasonable probability that, but for the error, the outcome of the proceeding would have been different. *See Graham*, 50 M.J. at 60 ("Based upon all of the foregoing, any relevance associated with the [improperly admitted 404(b)(2) evidence] was far outweighed by the prejudice that flowed from its admission. Furthermore, admission of the evidence materially prejudiced appellant."). Accordingly, we will set aside the findings of guilt for Specifications 9, 10 and 11 of Charge I.[6]

### C. Prosecution Exhibit 12 (Sentencing)

As described above, defense counsel did object to the military judge considering PE 12 in her sentencing determination. We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Edwards*, 82 M.J. 239, 243 (C.A.A.F. 2022). "When the Court finds error in the admission of sentencing evidence (or sentencing matters), the test for prejudice is 'whether the error substantially influenced the adjudged sentence.'" *Id.* at 246 (quoting *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018)). The government bears the burden of demonstrating that the admission of the erroneous evidence was harmless. *United States v. Cunningham*, 83 M.J. 367, 372 (C.A.A.F. 2023). We consider four factors when deciding whether an error substantially influenced an appellant's sentence: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Edwards*, 82 M.J. at 247; *see also Barker*, 77 M.J. at 384 ("An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant.").

Rule for Courts-Martial 1001(b)(4) states that evidence in aggravation offered by the government must be "*directly* relating to or resulting from the offenses of

---

[6] As set forth above, we find the military judge committed two separate and distinct errors in denying the defense request for expert assistance and by failing to withdraw PE 12 from the panel's consideration for findings. We conclude that each error standing alone caused sufficient prejudice to require the guilty findings for Specifications 9, 10, and 11 of Charge I to be set aside. Even if we were to assume one or more of these errors did not require such action, however, we would nevertheless find that under the circumstances of this case, the confluence of the errors mandates the same result. *See United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011) (quoting *United States v. Banks*, 36 M.J. 150, 170-71 (C.A.A.F. 1992) ("Under the cumulative error doctrine, 'a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding.'").

which the accused has been found guilty." Rule for Courts-Martial 1001(g)(2) states that in sentencing the court-martial may consider "any evidence *properly* introduced on the merits before findings, including evidence of other offenses or acts of misconduct even if introduced for a limited purpose." The rule, however, is silent as to previously admitted evidence pertaining to subsequently dismissed specifications.

While we acknowledge the general presumption that a military judge knows the law and applies it correctly, based on her comments on the record in this case, we are not confident the military judge did not inappropriately consider PE 12 in determining her sentence. On the one hand, when asked by defense counsel not to consider PE 12 during her sentencing deliberations, the military judge responded "I consider all – all of the evidence before the court," and "I take back all of the exhibits." To say the least, the military judge's apparently inelastic view of admitted exhibits is troubling, as is her failure to realize that, absent a recognized exception, a court-martial generally cannot consider exhibits pertaining to dismissed specifications in determining a sentence. On the other hand, the military judge also said "I understand what I am sentencing him for. I am sentencing him for the specific specifications that he was found guilty of." Although this last statement gives us some comfort, it does not clarify whether the military judge thought it was appropriate to consider PE 12 in her sentence on the remaining three domestic violence specifications pertaining to the victim. After all, if it was her view that PE 12 could play no role in her sentence (which would have been the correct view in this case), it is not clear why she insisted on taking it back with her in deliberation.

As even the government does not contend that PE 12 was proper aggravation evidence, the question before us is whether its admission at sentencing falls with R.C.M. 1001(g)(2)'s definition of "properly admitted" evidence. It does not. First, based on *Driskill* and our holding that the military judge erred in allowing the panel to consider PE 12 for findings, PE 12 was not "properly admitted" at trial.

Likewise, we reject any literal "bright-line" reading of R.C.M. 1001(g)(2) that would stand for the proposition that once an exhibit is "properly admitted" during the court-martial, it must *always* be part of the materials provided to the factfinder for sentencing deliberations, even if such evidence only pertains to offenses no longer at issue. To start with, it is simply not possible to square such a reading of R.C.M. 1001(g)(2) with the holding in *Driskill.* Moreover, such an interpretation of the rule would lead to absurd results. *See United States v. Beauge,* 82 M.J. 157, 162 (C.A.A.F. 2022) ("One such fundamental principle [of statutory construction] is that 'the plain language of a [rule] will control unless it leads to an absurd result") (citing *United States v. King,* 71 M.J. 50, 52 (C.A.A.F. 2012)). For example, consider the hypothetical where there are ten specifications and ten exhibits in a contested court-martial, with each exhibit exclusively pertaining to one specification. Under a "bright-line" reading of R.C.M. 1001(g), even if the panel returned not guilty verdicts for nine of the ten specifications, all of the exhibits

18

would have to be provided to the factfinder for sentencing deliberations because they were "properly admitted" at trial before the return of the verdicts. Defying both logic and common sense, such an interpretation of the rule would lead to an absurd result.

Accordingly, for all of the reasons set forth above, the military judge's failure to exclude PE 12 from her sentencing deliberations was error. Having found error we next apply the four factor test for determining whether said error substantially influenced the sentence: (1) the government's case pertaining to the victim was essentially non-existent; (2) the defense called family members who described appellant's upbringing in Colombia and the fact that his Good Soldier Book had eight letters of support; (3) the materiality of PE 12 was strong, as this was the only photographic evidence of the alleged assaults; and (4) the quality of the evidence in PE 12 was strong, notwithstanding the military judge's "suboptimal" finding. As such, the government cannot meet its burden to show that the admission of the erroneous sentencing evidence was harmless, and the sentences for Specifications 9, 10, and 11 are set aside.

### D. *Counterman v. Colorado*

In *Counterman v. Colorado*, the Supreme Court addressed a Colorado statute criminalizing threats which only required the state to prove that an objectively reasonable person would view the threats as credible. 143 S.Ct. 2106, 2112 (2023). But, because the statute lacked any requirement that the state also prove a subjective intent to threaten, the Court found it violative of the First Amendment. *Id.* at 2119. Appellant now argues that because Article 115, UCMJ suffers from the same defect as the statute in *Counterman*, his two convictions for communicating a threat to V2 must be set aside. Appellant is mistaken.

Article 115, UCMJ has three elements: (1) that the accused communicated certain language expressing a present determination or intent to injure the person, property, or reputation of another person; (2) that the communication was made known to that person or to a third person; and (3) that the communication was wrongful. *Manual for Courts-Martial, United States* (2019 ed.) [MCM], Pt. IV, ¶ 52(b)(1). The term "wrongful" is defined as:

> A communication must be wrongful in order to constitute this offense. The wrongfulness of the communication relates to the accused's *subjective intent*. For purposes of this paragraph, the mental state requirement is satisfied if the accused transmitted the communication *for the purpose of* issuing a threat or *with knowledge* that the communication will be viewed as a threat. A statement made under circumstances that reveal it to be in jest or made for an innocent or legitimate purpose that contradicts the expressed intent to commit the

> act is not wrongful. Nor is the offense committed by the mere statement of intent to commit an unlawful act not involving a threat.

*Id.* at ¶ 52(c)(2) (emphasis added). In addition to providing the members with the three statutory elements of the offense, the military judge instructed them that "[a] communication is wrongful if the accused transmitted it for the purpose of issuing a threat, or with knowledge that it would be viewed as a threat."

Moreover, the CAAF has expressly held that, unlike the Colorado statute in *Counterman*, the offense of communicating a threat under the UCMJ contains both an objective *and* a subjective element. *See, e.g. United States v. Rapert*, 75 M.J. 164, 168 (C.A.A.F. 2016) (holding that communicating a threat under the UCMJ "requires the Government to also prove a *subjective element*, i.e. the accused's mens rea") (emphasis in original); *United States v. Harrington*, 83 M.J. 408, 414 (C.A.A.F. 2023) ("In contrast to the first element [of communicating a threat], the third element's requirement of wrongfulness is properly understood in relation to the *subjective* intent of the speaker") (citations omitted) (emphasis in original).[7] As such, because there is no dispute that Article 115 requires the government to prove both an objective *and* a subjective element, *Counterman* is easily distinguishable.

Finally, to the extent appellant is arguing that the Supreme Court in *Counterman* ruled that any criminal threats statute containing an objective element is a per se violation of the First Amendment, we disagree. To the contrary, the Court in *Counterman* explained that although a statement can count as a "true threat" based solely on its objective content, the First Amendment nevertheless requires the government in a true threats case also to "prove that the defendant was aware in some way of the threatening nature of his communications." *Id.* at 2113. The Court further explained that "the First Amendment may still demand a subjective mental-state requirement shielding some true threats from liability" in order to reduce "the prospect of chilling fully protected expression." *Id.* at 2114-15. Put another way, the Court never held, either expressly or impliedly, that criminal threat statutes that contain an objective element violate the First Amendment, but rather held only the

---

[7] It is also worth noting that the CAAF issued its opinion in *Harrington* after the Supreme Court decision in *Counterman*. We presume, as we must, that our superior court was aware of the holding in *Counterman* when it issued its decision, and absent a ruling from the CAAF that Article 115, UCMJ runs afoul of the First Amendment, we are not in a position to make that finding ourselves. *See United States v. Kelly*, 45 M.J. 259, 262 (C.A.A.F. 1996) ("When an intermediate appellate court sets out to discover whether it continues to be bound by precedent of a higher court, which that higher court has not repudiated, it undertakes a risky venture. While negotiating such a path is not inevitably fatal, it is so marked with pitfalls that it should not be undertaken with temerity.").

OLAHPRADO — ARMY 20220200

First Amendment requires the government to prove that an accused had a subjective intent to threaten.

**CONCLUSION**

The findings of guilty to Specifications 9, 10, and 11 of Charge I and to Charge I are SET ASIDE, and a rehearing on those specifications is authorized. The remaining findings of guilty are AFFIRMED.

The sentence is SET ASIDE, and a rehearing on the sentence is authorized.[8]

Senior Judge PENLAND and Judge MORRIS concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[8] Given, *inter alia*, the fact that the reprimand impermissibly referenced conduct from the dismissed Specification 8, appellant's likely meritorious post-trial delay claim, and the military judge's error in considering PE 12 as part of her sentence, we are not confident in our ability to reassess the sentence for the remaining findings of guilty and will instead set aside the entire sentence.

21